Morgan, J.
On Monday the twenty-sixth August, 1867, the wife of William McCubbin was attacked with yellow fever. A physician was immediately called in, and the patient was placed under the charge of a nurse.
On the Wednesday following she was quiet. About one o’clock of that day the physician ordered her an enema. We are satisfied from *714 the evidence that the enema as ordered was to have been composed as follows: Sulphate of quinine thirty grains, mucilage of gum arabio four ounces, camphor water four ounces, Batley’s sedative solution, thirty or sixty drops, to be administered one-half as soon as received, the other in an hour after. We ascertain the component parts of the prescription from the testimony of the physician, as the prescription itself could not be found in the defendant’s shop where it should have been kept. The prescription was ordered by the physician to be compounded at the defendant’s shop. The husband of the deceased took it there. He handed it to an employe. After it was compounded he purchased an injection pipe, paid for both, and left. He gave them to the nurse. She administered a portion of it. The effect seems to have been instantaneous. It threw the unfortunate woman into spasms and convulsions, causing her to purge and vomit at the same time. The attending physician was immediately sent for. He could not be found, and only reached his patient late at night. He did all that his science allowed him to do for her relief. He called in another physician. Their efforts were fruitless. Two days after the patient died.
This suit is instituted by the husband of the deceased and the father of her child, a minor, against the defendant to make him responsible in damages for the death of this woman, the allegation being that the prescription was improperly compounded.
The evidence leaves no doubt on our mind that spirits of camphor was substituted for camphor water; that the sufferings of the woman, which are shown to have been intense, were caused by this mistake, camphor water being a very innocent preparation; spirits of camphor being a decoction of camphor and alcohol; and that it contributed to a large extent, if it did not absolutely cause the death of the patient.
The prescription was not compounded by the defendant. At the time it was put up he was not in the city. The clerk had not been employed by him. His services had been engaged by his brother. The defendant is none the less responsible for his acts. The employment was authorized, and his responsibility for the acts of his employes can not be disputed.
The case was twice tried before a jury in the Fifth District Court. It was then, by consent, remanded to the Fourth District Court and submitted to tlie judge alone. He decided in favor of the defendant, and the plaintiff has appealed.
In his own name plaintiff claims damages for the necessary expenses incurred by him 'consequent upon the death of his wife, for the loss of time it occasioned him, from the loss of his wife’s services, and for the wrongs inflicted upon his feelings.
*715 As tutor to his minor child he claims that, from the agonies endured by his wife she suffered heavy damages, and that her right of action therefor has been transmitted to her heir, and that her death, which he lays at the defendant’s door, having deprived the child of a mother’s care, he is responsible in damages on that account. The aggregate amount claimed from the defendant is $35,000.
His damages, if he is entitled to any, is the amount expended by him for medical and other services subsequent to the giving of the enema, and for the funeral expenses.
The right to damages on the part of the child is that which he inherits from his mother.
The defendant filed a peremptory exception to plaintiff’s deinand, on the ground that the petition disclosed no cause of action. This exception was filed after the jury had been impanneled. The grounds upon which it rests are, first, “ because it is not alleged that the damage complained of was suffered through the fault of the defendant, and it is necessary it should be alleged to be the defendant’s fault before that fact could be proved,” and second',' “because it (the petition) does not state'that the defendant, as employer, might have prevented the act which caused the damage, and did not do it.” The exception was sustained, but the plaintiff was allowed to amend. Plaintiff excepted to the ruling of the court which maintained the exception. Defendant excepted to the order allowing plaintiff to amend. Both rulings-were correct. The exception was a peremptory one and could be pleaded at any time during the progress of the trial. Amendments are always allowed in the discretion of ihe court.
After the amendment was made, defendant then pleaded the prescription of one year. The plea was properly overruled. The demand was made within the year of the alleged tort. The demand is the test, and not the sufficiency of the allegations which support it.
But the defendant still contends that the amended petition is defective, because it d>es not allege that he was in fault. The allegations are, that the death of the deceased was caused by the negligence of the defendant’s clerk, and that he, the defendant, might have prevented the act complained of, but did not do so. If the act which caused the damage was done by the defendant’s cleik, and the defendant be responsible therefor, and the defendant could have prevented it, but did not, then clearly it was by the fault of the defendant that the damage occurred, and the use of the word fault was not a necessary allegation to fix the responsibility upon him. If.he could have prevented the act, and did not, he was necessarily in fault.
On the trial the defendant moved to strike out the second and third causes of action as stated in the petition, which were :
*716 Second — “Also, as tutor of his minor, for ten thousand dollars damages, suffered by the minor, personally, in the loss and deprivation of the care, education, assistance and love of his mother.”
1Third — “In his individual capacity, and in his own behalf, for five thousand dollars damages, for actual expenses, loss of the assistance and services of his wife in business, and for personal sufferings in mind for the loss of his wife, all caused by said criminal mistake.”
The judge ordered them stricken out. As regards the second, his ruling was correct. The action, in so far as the minor is concerned, is the right of action which his mother had against the defendant for the suffering which was caused her by the defendant’s employe, and which he inherited. He has no claim against him for the loss which he suffered through his mother’s death. With regard to the third objection, the court erred. Defendant is responsible to the plaintiff for all the expense and damage which he suffered subsequent to the giving of the enema.
The first objection which the defendant raises to the plaintiff’s demand on the merits is, that the certificate of death, given by the physician, states that she died of yellow fever, and that the plaintiff caused it to be published in the newspapers that she died of yellow fever.
In so far as the certificate is concerned that was no act of the plaintiff’s. As regards the notice, she might have died of yellow fever and still her death from that disease might have been caused by the enema. If a pistol had been fired into some fleshy part of her body while she was laboring under an attack of fever, the ball itself might not have produced death, but the shock by aggravating the fever probably would. Under these circumstances she would have died of yellow fever, but her death would have been superinduced by the shot. So in this case. The deceased was suffering under an attack of yellow fever. It was a violent attack. Quiet and repose were of all thin"gs most necessary to her safety. She was dangerously ill, it is true. But she had at least one chauce for her life, and the injecting of this violent and exciting substance into a particularly sensitive portion of her body, took, in our opinion, from the unfortunate woman the one chance which was left to her. She died, it is true, from yellow fever, but it was the enema which made the fever result fatally.
The next ground of defense is, that defendantcan not be condemned, unless the plaintiff proves that he was some way in fault, and that he really might have prevented the act which caused the damage. In one sense it was impossible for him to have prevented the calamity, because he was not in the city. But, if a master is only to be held responsible for the act of his servant when he might have prevented the act and did not, there would be no responsibility in the principal, *717 except for such acts as were done in his presence. If this were the law, if the driver of a carriage owned by the keeper of a public stable, wantonly ran into and destroyed the carriage of another, the owner of the public carriage would not be held responsible for the damage caused by his servant, because it was no fault of his that the other carriage was run into. If a man is run over by a careless car driver, the company in whose employ the driver is, can not be held responsible, because it was not the company’s fault. But we know that this has never been considered law, and that where injuries have occurred as the result of carelessness on the part of the employes of such parties, the principals have been made to respond in damages. He further attempts to exculpate himself, from the fact that the clerk who compounded the prescription was reputed to be a competent druggist. To a certain extent he has established this: that is to say, he has produced a number of witnesses who testify in that direction. But there is one recommendation which he did not have, and that'was a diploma. It is not pretended that he was a graduate in pharmacy from any medical institute.
• It may, however, be assumed that he was competent. The defendant’s liability would be none the less certain. The defendant is himself represented as being a most competent druggist. If he had made the mistake, would his proficiency in his calling shield him ? or would it not rather aggravate the fault? Incompetency and carelessness — and such mistakes, arise from one or the other of these causes — result in the same way. Either or both produce suffering and sometimes death. And can it be that if a physician should prescribe for .his slightly ailing patient a small quantity of calomel and soda, and the druggist were to substitute arsenic for soda, that he could shield himself from the consequences which might result, by saying, if the prescription was compounded by himself, that it was a mistake, and if the act of his servant that he could not have prevented it? The law does not place a community in the position of being poisoned by mistakes, with no one to be held responsible therefor. If it was the master who did the wrong, the master is responsible. If it was his servant who did it, he is still responsible, for the master is responsible for the acts of his servant when done in the course of his usual employment.
The last serious defense set up is, that the enema did the patient no harm. Many physicians were examined upon-this point, and cbunsel for defendant, in the very able brief which he furnished us, says: “With surprising unanimity, these physicians, every one of whom have had large experience in the treatment of yellow fever, declared the effect would have been beneficial rather than injurious.”
As we have said before, Mrs. McCubbin was taken ill on Monday, *718 the twenty-sixth of August. On the Wednesday following the enema was administered. Up to this time the patient had been quiet. The nurse says ttiat, turning into the third day the fever began to abate and the physician said he found her much better; that he was going to order a mixture which would act like a charm, as she was not sweating freely enough. The enema came, and this is how the nurse, who administered it, describes its effects : “ As soon as I gave it to her she commenced to complain; she said, ‘Oh nurse! don’t give me any more, for God’s sake! it will kill me.’ I suppose I gave her one-third of it; she was complaining all the time. I set the cup down on the bed and called McCubbin (who had left the room at his wife’s request when the nurse was about to administer the enema) and told him the injection made her very ill. It made her that ill it threw her into spasms. She commenced throwing up and purging down, and was in great agony, but got easier afterwards.”.
McCubbin swears that, when he got up stairs, his wife was straightened out and almost black in the face, and apparently in spasms or a. fit. He says : “ I put my hands underneath her to raise her from the bed; she worked in the spasms about three minutes, and in her spasms both purged and vomited at the same moment, which seemed to give her some ease. ‘ Oh my God, Will,’ she said, ‘ what have you given me? I am all on fire! I am burning!’ And so she kept on. You-could hear her until ten o’clock at night a block off, and she had never-made a moan before.”
The attending physician was sent for immediately. It was a season of calamity. The physician was in full practice, and, hurrying as he was, from patient to patient, could not be found. Late in the night he came of his own accord. Discovering her condition, he immediately denounced the mistake which had been made; said to several who were present, and at various times, that the injection had injured her; took the bottle himself to the druggist to see whether, per chance, he had made the mistake in writing out the formula, and is shown to have said that, but for the injection,- his patient would have done well. He did all in his power to remedy the evil which had been done. Nothing that was tried for her relief succeeded. She sank gradually from the time the enema was administered until three days afterward, when she died.
When scientific gentlemen undertake to tell us, under such a state of facts, that the enema, as administered, was a benefit to the patient instead of an injury; that a substance as powerful as alcohol, in which camphor, a violent stimulant, has been dissolved, can be injected into one of the tenderest parts of the human frame, when the patient is suffering from a severe attack of such a disease as the yellow fever is,. *719 without doing any harm, but, on the contrary, doing good, we see in our mind’s eye the unfortunate victim upon whom the experiment has been tried, as she is described by the witnesses, writhing in agony, dying, dead, and we say that that dreadful fact alone destroys all their theories; and we think that he who, by himself or those for whose acts he is responsible, caused this agony, not to say death, should be made to answer for the suffering which he caused.
As regards the damages, the plaintiff has not shown what he expended, and therefore we can give, him no judgment. As to the minor child, we think he should receive twenty-ñve hundred dollars,
It is therefore ordered, adjudged and decreed that the judgment of the district court be avoided, annulled and reversed, and it is now ordered, adjudged and decreed that there be judgment in favor of the plaintiff, William McCubbin, in his capacity as tutor to his minor child, William James McCubbin,' and against the defendant, in the sum of twenty-five hundred dollars, with legal interest from judicial demand, and costs of suit in both courts.